20-1275-bk
*In re: Windstream Holdings, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of February, two thousand twenty-one.

PRESENT:

> JOHN M. WALKER, JR.,
> ROBERT D. SACK,
> RICHARD J. SULLIVAN,
> *Circuit Judges*,

_____

IN RE: WINDSTREAM HOLDINGS, INC.

_____

GLM DFW, INC.,

> *Creditor-Appellant*,

v.                                          No. 20-1275-bk

WINDSTREAM HOLDINGS, INC.,

> *Debtor-Appellee*.

_____

**For Creditor-Appellant:**          DAVOR RUKAVINA, Munsch Hardt Kopf
                                     & Harr P.C., Dallas, TX.

**For Debtor-Appellee:**            C. HARKER RHODES IV (Stephen E.
                                     Hessler, P.C., Sara Shaw Tatum,
                                     Kirkland & Ellis LLP, New York, NY, *on
                                     the brief*), Kirkland & Ellis LLP,
                                     Washington, DC.

Appeal from the United States District Court for the Southern District of New York (Cathy Seibel, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that this appeal is **DISMISSED**.

GLM DFW, Inc. appeals an order of the district court (Seibel, *J.*) affirming an order of the bankruptcy court (Drain, *Bankr. J.*) that granted the debtor-in-possession, Windstream Holdings, Inc., the authority to pay various prepetition debts held by certain critical vendors and other creditors while Windstream was still in bankruptcy. GLM argues primarily that, in granting Windstream's motion over GLM's objection, the bankruptcy court improperly delegated its judicial authority to Windstream. GLM's position is that the bankruptcy court essentially rubber-stamped Windstream's proposed list of creditors, and should have instead conducted a creditor-by-creditor analysis before allowing Windstream to offer any

2

creditor preferential treatment. Separately, GLM argues that the bankruptcy court erred by not requiring Windstream to publicly disclose that list of creditors. While this appeal was pending, the bankruptcy court confirmed Windstream's plan of reorganization and Windstream substantially consummated that plan.

We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

*Discussion*

Equitable mootness is a prudential doctrine under which a court may dismiss a bankruptcy appeal "when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable." *See Deutsche Bank AG v. Metromedia Fiber Network, Inc.* (*In re Metromedia Fiber Network, Inc.*), 416 F.3d 136, 143 (2d Cir. 2005) (internal quotation marks omitted); *see also Frito-Lay, Inc. v. LTV Steel Co.* (*In re Chateaugay Corp.*), 10 F.3d 944, 949–50 (2d Cir. 1993). The doctrine is deployed in a "pragmatic" and flexible fashion, and must be responsive to the "specific factors presented in a particular case." *Beeman v. BGI Creditors' Liquidating Tr.* (*In re BGI Inc.*), 772 F.3d 102, 107–08 (2d Cir. 2014) (internal quotation marks omitted). Although equitable mootness is

"distinct from constitutional mootness," the two "have been discussed in the same breath." *Metromedia Fiber Network*, 416 F.3d at 143–44.

The primary purpose of equitable mootness is to give courts a tool "to avoid disturbing a reorganization plan once implemented." *Id.* at 144. As a result, where, as here, such a plan has already been substantially consummated, we presume that an appeal is equitably moot. *See Momentive Performance Materials Inc. v. BOKF, NA* (*In re MPM Silicones, L.L.C.*), 874 F.3d 787, 804 (2d Cir. 2017); *BGI*, 772 F.3d at 108. A party seeking to overcome that presumption may do so only by demonstrating that five factors – dubbed the *Chateaugay* factors – are met:

(1) "the court can still order some effective relief;"

(2) "such relief will not affect the re-emergence of the debtor as a revitalized corporate entity;"

(3) "such relief will not unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the [b]ankruptcy [c]ourt;"

(4) "the parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings;" and

(5) "the appellant pursued with diligence all available remedies to obtain a stay of execution of the objectionable order if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from."

*Chateaugay*, 10 F.3d at 952–53 (internal quotation marks and alterations omitted).

It is the appellant's burden to show that all five of these factors are satisfied.   *See*

*BGI*, 772 F.3d at 108, 110; *see also R² Invs., LDC v. Charter Commc'ns, Inc.* (*In re Charter*

*Commc'ns, Inc.*), 691 F.3d 476, 482, 484 (2d Cir. 2012).

GLM takes the position that the equitable mootness doctrine is simply

inapplicable in this case because the appeal does not directly concern the

bankruptcy court's order confirming Windstream's plan of reorganization.   We

disagree.

Our precedent is clear that equitable mootness can be applied "in a range of

contexts," including appeals involving all manner of bankruptcy court orders.

*BGI*, 772 F.3d at 109 & n.12 (collecting cases).   In fact, *Chateaugay* itself applied the

doctrine to dismiss a creditor's challenge to various orders, several of which were

independent of the bankruptcy court's decision to confirm the reorganization

plan.   *See* 10 F.3d at 948.   GLM's argument therefore has no basis in law.

On top of that, GLM's position makes little sense.   For one thing, GLM

ignores the fact that an appeal does not need to directly challenge a reorganization

plan to impact that plan; as discussed below, this appeal is a prime example of that

phenomenon.   For another, GLM overlooks the important interest of finality that

5

attaches once a reorganization plan is approved and consummated. *See MPM Silicones*, 874 F.3d at 804 (explaining that equitable mootness "requires us to 'carefully balance the importance of finality in bankruptcy proceedings against the appellant's right to review and relief'" (quoting *Charter Commc'ns*, 691 F.3d at 481)). Consequently, we conclude that the equitable mootness doctrine is applicable in this case even though GLM has not expressly asked us to reject the bankruptcy court's approval of Windstream's plan of reorganization.

Applying the doctrine here, GLM has clearly failed to demonstrate that it meets all five of the *Chateaugay* factors. Most notably, GLM did not "pursue[] with diligence all available remedies to obtain a stay of execution of the objectionable order." *Chateaugay*, 10 F.3d at 953 (internal quotation marks omitted); *see also BGI*, 772 F.3d at 110. Indeed, GLM never sought to stay the bankruptcy court's initial order permitting Windstream to pay various prepetition debts, nor did GLM seek an expedited appeal or ask the bankruptcy court to hold off on confirming the reorganization plan until this dispute has been resolved.

This diligence requirement has been described as a "chief consideration" under *Chateaugay*. *Metromedia Fiber Network*, 416 F.3d at 144; *see also MPM Silicones*, 874 F.3d at 804. "In the absence of any request for a stay, the question is

6

not solely whether we *can* provide relief without unraveling the [p]lan, but also whether we *should* provide such relief in light of fairness concerns." *Metromedia Fiber Network*, 416 F.3d at 145; *see also MPM Silicones*, 874 F.3d at 804–05. Here, fairness concerns strongly counsel in favor of dismissing GLM's appeal.

Granting GLM the relief it seeks could cause tens of millions of dollars in previously satisfied claims to spring back to life, thereby potentially requiring the bankruptcy court to reopen the plan of reorganization. *See Chateaugay*, 10 F.3d at 953 (reasoning that equitable mootness applies when granting relief could threaten to unravel transactions that have already taken place or could otherwise "create an unmanageable, uncontrollable situation for the [b]ankruptcy [c]ourt" (internal quotation marks omitted)); *see also Off. Comm. of Unsecured Creditors of LTV Aerospace & Def. Co. v. Off. Comm. of Unsecured Creditors of LTV Steel Co.* (*In re Chateaugay Corp.*), 988 F.2d 322, 326 (2d Cir. 1993) (explaining that "completed acts in accordance with an unstayed order of the bankruptcy court must not thereafter be routinely vulnerable to nullification if a plan of reorganization is to succeed"). Moreover, it would likely be highly disruptive for the creditors that received these funds to return them more than a year later. And while a parade of horribles is not guaranteed to occur, "[h]aving sought no stay of the bankruptcy court's order

7

(and no expedited appeal), [GLM] bear[s] the burden of this uncertainty."

*Metromedia Fiber Network*, 416 F.3d at 145. Accordingly, we conclude that it would be inequitable to grant GLM relief at this belated stage, and that the appeal is therefore moot.[1]

### *Conclusion*

We have considered GLM's remaining arguments and find them to be meritless. As a result, we **DISMISS** this appeal as moot.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[1] While GLM also seeks the disclosure of the identities of creditors that received payment of prepetition debts, the possibility that we could supply GLM with that relief without upsetting Windstream's plan of reorganization is not a reason to allow this appeal to go forward. GLM has no cognizable interest in receiving those disclosures if it lacks the ability to parlay them into a possible financial recovery. *See Coll. Standard Mag. v. Student Ass'n of the State Univ. of N.Y.*, 610 F.3d 33, 35 (2d Cir. 2010) (noting that the "[t]he real value of the judicial pronouncement . . . is in the settling of some dispute which affects the behavior of the defendant towards the plaintiff" (internal quotation marks and emphasis omitted)).